UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEROME'S FURNITURE WAREHOUSE, a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>ASHLEY FURNITURE INDUSTRIES, INC., a Wisconsin Corporation; and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No.: 20CV1765-GPC(BGS)<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>[Dkt. No. 15.] |

Before the Court is Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 9(b) and 12(b)(6). (Dkt. No. 15.) Plaintiff filed an opposition. (Dkt. No. 17.) Defendant replied. (Dkt. No. 18.) Based on the reasoning below, the Court GRANTS Defendant's motion to dismiss with leave to amend.

**Background**

On September 9, 2020, Plaintiff Jerome's Furniture Warehouse ("Plaintiff") filed a complaint against its competitor Defendant Ashley Furniture Industries, Inc. ("Defendant") for 1) false advertising arising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), and 2) unfair competition under the common law and the California Business and Professions Code section 17200 *et seq.* ("UCL") and section 17500 *et seq.*

("FAL") (Dkt. No. 1, Compl.)  Plaintiff has been selling quality furniture and home furnishings to retail customers since 1954.  (*Id.* ¶ 7.)  Its business model offers quality product and outstanding customer service at the lowest prices possible.  (*Id.*)  It has built its brand and customer goodwill through "Jerry's price" which the consumers have come to recognize as a no-haggle price where the customer can expect to purchase furniture and home furnishings with confidence that the stated price reflects a fair and honest price with no hidden fees or terms.  (*Id.*)

Defendant is also a retail seller of furniture since 1987 but in contrast to Plaintiff's no-haggle price, its business practices include false and misleading advertising in order to lure the customers into the store and customers do not learn of the true prices of the merchandise until they have selected the items they want to purchase.  (*Id.* ¶¶ 4, 8.)  At that point, customers are less likely to simply walk away and begin a new search.  (*Id.* ¶ 8.)

Plaintiff alleges five misrepresentations in Defendant's advertisements.  First, Defendant's advertisement for 50% off PLUS 12 months of interest free payments is false.  (*Id.* ¶ 9.)  It is not until the customers are inside the store and have already selected merchandise when they are told that the promotion is for either 50% off or 60 months[1] of interest-free payments but not both.  (*Id.*)  Second, Defendant routinely fraudulently overstates the "retail value" of its merchandise by falsely overstating the "savings" to be realized from its "sales" price.  (*Id.* ¶ 11.)  Third, Defendant misrepresents the purported "value" of its merchandise to mispresent the "savings" to be realized.  (*Id.*)  Fourth, it buries undisclosed finance payments into monthly payments while also stating the payments are "interest-free."  (*Id.* ¶ 14.)  Fifth, Defendant advertises "NO DOWN PAYMENT REQUIRED" but in very fine print that is impossible to read, it states that

---

[1] Plaintiff acknowledges that the 60 months is a mistake and should be 12 months. (Dkt. No. 17 at 9 n.2.)  Nonetheless, it argues that the misleading advertisement includes a variety of different months of interest free payments.

customers will still have to pay sales tax and delivery charges up front which is effectively a "downpayment" of 13%. (*Id.* ¶ 12.)

Defendant only reveals the truth of the misleading advertisements after a customer has decided to purchase a product and by that point they are reluctant to leave and start a new search. (*Id.* ¶ 13.) Because foot traffic is the "very lifeblood of the retail industry", these tactics and misrepresentations in advertising generate undeserved "foot traffic" into Defendant's stores and diverts them away from Plaintiff's stores causing it financial harm due to loss of sales and profits. (*Id.* ¶¶ 11-16.)

## Discussion

**A.    Legal Standard as to Federal Rule of Civil Procedure 12(b)(6)**

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990). Under Federal Rule of Civil Procedure 8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling

the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.,* 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See DeSoto,* 957 F.2d at 658; *Schreiber,* 806 F.2d at 1401.

**B.      Federal Rule of Civil Procedure 9(b)**

Courts in this district have applied Rule 9(b) to false advertising claims under the Lanham Act that are grounded in fraud. *See Bobbleheads.com, LLC v. Wright Bros., Inc*., 259 F. Supp. 3d 1087, 1095 (S.D. Cal. 2017) ("As to this threshold matter, the Court agrees with the weight of authority that Rule 9(b) applies to Lanham Act claims that are grounded in fraud."). Moreover, the Ninth Circuit has held that Rule 9(b) applies to state-law causes of action, including the UCL and FAL. *Vess v. Ciba-Geigy Corp., U.S.A*., 317 F.3d 1097, 1103 (9th Cir. 2003) (applying Rule 9(b) to section 17500 claim); *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) particularity requirement to UCL claim grounded in fraud).

In federal court, where a plaintiff alleges fraud or a claim is grounded in fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* A party must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Odom v. Microsoft Corp*., 486 F.3d 541, 553 (9th Cir. 2007) (internal quotation marks omitted).

Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *see also Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (noting that particularity requires plaintiff to allege the "who, what, when, where, and how" of the alleged fraudulent conduct). "Rule 9(b) would clearly be superfluous if its only function were to ensure that defendants are provided with that degree of notice which is already required by Rule 8(a)." *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1547 (9th Cir. 1994) (*en banc*) *superseded by statute on other grounds*, Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4(b)(1), *as recognized in Ronconi v. Larkin*, 253 F.3d 423, 429 n.6 (9th Cir. 2001). In addition, the complaint must state "what is false or misleading about a statement, and why it is false." *Id.* at 1548.

C.    **Motion to Dismiss Complaint Under Rule 9(b)**

Defendant moves to dismiss the complaint for failure to comply with Rule 9(b). (Dkt. No. 15-1, at 9-14.[2])  Plaintiff does not dispute that Rule 9(b) applies to its claims which are grounded in fraud and argues it has sufficiently alleged facts to put Defendant on notice as to the claims against it. (Dkt. No. 17 at 12 n.4, 15-16.)

Here, the complaint makes several false advertising claims. First, Plaintiff alleges that a St. Patrick's Day advertisement stating 50% off PLUS 12 months interest-free financing is misleading because later when the customers enter the stores and select their furniture, they are told that they may choose either 50% off OR 12 months interest-free payments but not both. (Dkt. No. 1, Compl. ¶¶ 8, 9.) The complaint also references a similar advertisement that ran on September 4, 2020 in the San Diego Union Tribune. (*Id.* ¶ 9; *id.*, Ex. A.) That advertisement presents a Labor Day sale advertisement

---

[2] Page numbers are based on the CM/ECF pagination.

promoting 40% off PLUS! 5 years of no interest, no down payment and no minimum purchase. (*Id.*, Ex. A at 19.) The complaint alleges that customers have frequently complained about these misleading advertisements. (*Id.*)

However, a statement that customers have frequently complained about the misleading advertisements do not provide the when, where, why and how of these customers' complaints.[3] As such, the complaint fails to allege that the advertisements are, in fact, false. *See Avakian v. Wells Fargo Bank, N.A.*, 827 Fed. Appx. 765 (9th Cir. Oct. 27, 2020) (affirming dismissal of second amended complaint where borrowers did not show that Lender's challenged statements were false when they were made).

The other alleged false advertisements are more conclusory than one just discussed and necessarily fail to comply with Rule 9(b). The complaint summarily alleges that Defendant 1) overstates the "retail value" of its merchandise to falsely overstate the "savings" to be realized from its "sale price"; 2) misrepresents "the purported 'value' of its merchandise to misrepresent the 'savings' to be realized from buying Defendants' merchandise."; 3) buries "undisclosed finance charges in so-called 'interest-free' payments" or as alleged elsewhere "customers may receive 'interest-free' payments when, in fact, the interest is already buried into the monthly payments advertised by Defendant[]"; and 4) advertises "NO DOWN PAYMENT REQUIRED" but in very fine print that is impossible to read, it states that customers will still have to pay sales tax and delivery charges up front which is effectively a "downpayment" of 13%. (Dkt. No. 1, Compl. ¶¶ 11, 12, 22.) As an example of overstating retail prices, Plaintiff claims that Defendant will misrepresent that "this $2,000 sofa is now on sale for $1,200." (*Id. 11*.) According to Plaintiff, this misrepresentation causes consumers to believe the

---

[3] The Better Business Bureau complaint cited in the complaint concerns the customer's inability to apply the promotion "up to 50% off + 10% off" on its website. (Dkt. No. 1, Compl. ¶ 10.) This complaint is not relevant to and does not support Plaintiff's false advertisement claim of 50% off PLUS 12 months interest-free promotions.

merchandise is of a higher quality than it truly is and accordingly, overstates the savings realized by the consumers. (*Id.*)

These additional alleged misrepresentations are conclusory and do not provide facts concerning the circumstances surrounding the fraud and do not provide any particularized facts; therefore, they fail to comply with Rule 9(b). *See Ebeid ex. rel. United States v. Lungwitz*, 616 F.3d 993, 1000 (9th Cir. 2010) (holding a complaint's "general allegations—lacking any details or facts setting out the who, what, when, where, and how of the [allegedly fraudulent conduct]"—were insufficient to satisfy Rule 9(b) (internal quotation marks omitted)); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., In*c., 637 F.3d 1047, 1057 (9th Cir. 2011) (holding a complaint failed to satisfy Rule 9(b) where the allegations were lacking in detail).

Accordingly, because the alleged fraudulent misrepresentations are the basis of both causes of action, the Court GRANTS Defendant's motion to dismiss for failure to comply with Rule 9(b).

**D.     First Cause of Action – False Advertising, 15 U.S.C. § 1125(a)(1)(B)**

On the Lanham Act, Defendant argues that Plaintiff has failed to allege facts to support falsity and second, it has failed to allege that the false advertising "actually deceived or had the tendency to deceive a substantial segment of its audience" because there is no example of any customer actually being deceived or any facts showing a likelihood of deception. (Dkt. No. 15-1 at 15.) Plaintiff disagrees.

Under the Lanham Act, a false advertising claim, "requires a showing that (1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product." *Newcal Indus., Inc. v. Ikon*

*Office Sol.*, 513 F.3d 1038, 1052 (9th Cir. 2008) (quoting *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829 (9th Cir. 2002)). "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *Tiffany Inc. v. eBay Inc.,* 600 F.3d 93, 112 (2d Cir. 2010) ("A claim of false advertising may be based on at least one of two theories: 'that the challenged advertisement is literally false, i.e., false on its face,' or 'that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers.'"). When a statement is literally false, the second and third elements of actual deception and material are presumed. *AECOM Energy & Constr., Inc. v. Ripley*, 348 F. Supp. 3d 1038, 1056 (C.D. Cal. Nov. 8, 2018).

The Court relies on its analysis above on Rule 9(b) concluding that Plaintiff has failed to provide specific facts as to the alleged false advertisements. Therefore, the Court GRANTS Defendant's motion to dismiss the Lanham Act claims on the same basis.

### E.     Second Cause of Action - Unfair Competition

On the second case of action for unfair competition, as noted by Defendant, Plaintiff seeks to allege five distinct legal theories of liability without any factual allegations to support each theory. (Dkt. No. 15-1 at 16.) The Court agrees.

The complaint alleges "unfair competition" pursuant to California Business and Professions Code "Sections 17200*, et seq.*, and in particular, Section 17508[4]" and California common law. (Dkt. No. 1, Compl. ¶ 31.) It also alleges that Defendant has

---

[4] Section 17508 provides that "(a) It shall be unlawful for any person doing business in California and advertising to consumers in California to make any false or misleading advertising claim, including claims that (1) purport to be based on factual, objective, or clinical evidence, (2) compare the product's effectiveness or safety to that of other brands or products, or (3) purport to be based on any fact." Cal. Bus. & Prof. Code § 17508. Plaintiff fails to provide any factual allegations to support a violation of Section 17508.

employed unlawful, unfair and/or fraudulent business methods under sections 17200 *et seq*. and sections 17500 *et seq*.  (*Id*. ¶ 33.)  Based on these allegations, Plaintiff appears to be alleging violations of the unlawful, unfair and fraudulent prongs of the UCL, violations of the FAL and claims under common law unfair competition.

**1. Standing**

Defendant argues that Plaintiff has failed to allege standing to sue under the UCL and FAL because it must demonstrate it relied on the alleged misleading statements as opposed to third party customers.  (Dkt. No. 15-1 at 16-17.)  Plaintiff opposes.  (Dkt. No. 17 at 24-25.)

In this case, the UCL and FAL claims are based on allegedly fraudulent advertisements and sound in fraud.  "In 2004 . . . the voters of California passed Proposition 64, which restricts standing for individuals alleging UCL and FAL claims to persons who have suffered injury in fact and have lost money or property as a result of the unfair competition."  *Hinojos v. Kohl's Corp*., 718 F.3d 1098, 1103 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) (quotations omitted).  "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation."  *Kwikset Corp. v. Superior Ct*., 51 Cal. 4th 310, 326 (2011) (citations omitted).

But where a UCL claim "sounds in fraud, [the plaintiff is] required to prove actual reliance on the allegedly deceptive or misleading statements, and that the misrepresentation was an immediate cause of [the] injury-producing conduct."  *Sateriale v. R.J. Reynolds Tobacco Co*., 697 F.3d 777, 793 (9th Cir. 2012) (The California Supreme Court has held that "the amended UCL 'imposes an actual reliance requirement on plaintiffs' who bring a UCL action 'based on a fraud theory involving false advertising and misrepresentations to consumers' because 'reliance is the causal mechanism of fraud.'").  According to the California Supreme Court, under the fraudulent prong of the UCL, reliance is an essential element and must be proved by "showing that the defendant's misrepresentation or nondisclosure was 'an immediate

cause' of the plaintiff's injury-producing conduct." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009). But a "plaintiff is not required to allege that [the challenged] misrepresentations were the sole or even the decisive cause of the injury-producing conduct." *Id.* at 328. Contrary to Plaintiff's suggestion that the misrepresentation need not be the sole cause of the injury causing conduct, the alleged misrepresentation must still play a substantial role in the conduct. *Id.* at 327 ("It is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing his decision.").

Because no California state court has addressed whether "competitor plaintiffs must plead their own reliance or whether pleading consumer reliance is sufficient for fraudulent business practice claims brought by competitors", there is a split of authority in the district courts in California as to whether competitors must allege actual reliance under the fraudulent prong of the UCL but the majority view is that a plaintiff must alleges its own reliance and not the reliance of third parties. *23andMe, Inc. v. Ancestry.com DNA, LLC*, 356 F. Supp. 3d 889, 911 (N.D. Cal. 2018); *In re Outlaw Lab., LLP*, 463 F. Supp. 3d 1068, 1086 (S.D. Cal. 2020) (because Outlaw did not challenge standing, the Court adopted the majority approach requiring reliance to be pled by the plaintiff). In *23andMe, Inc.*, however, because the UCL unfair prong claim did not sound in fraud, the court held that the actual reliance requirement did not apply. *23andMe, Inc.*, 356 F. Supp. 3d at 910-11 (disagreeing with other district courts holding that "as a result of" imposes an actual reliance requirement on all three prongs of the UCL).

In this case, all of Plaintiff's claims under the FAL and the three prongs of the UCL are based on fraud. Therefore, in reliance on the majority of the district courts to consider this issue, the Court concludes that Plaintiff must allege its actual reliance to support UCL and FAL claims sounding in fraud. Accordingly, the Court GRANTS Defendant's motion to dismiss for failure the UCL and FAL causes of action.

///
///

### 2. Failure to State a Claim

Defendant also argues that the unfair prong of the UCL claim and common law unfair competition claim fail to state a claim for relief. (Dkt. No. 15-1 at 18, 21.) Plaintiff argues that it has sufficiently alleged an unfair and common law unfair competition claim. (Dkt. No. 17 at 26-27, 28-29.)

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200. "Each of these three adjectives captures a separate and distinct theory of liability." *Rubio v. Capital One Bank*, 613 F.3d 1195, 1203 (9th Cir. 2010) (quotation marks omitted). A business act or practice is "unfair" when the conduct "threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cel-Tech Comms., Inc. v. Los Angeles Cellular Tel. Co.,* 20 Cal. 4th 163, 187 (1999). Where a claim of an unfair act or practice is predicated on public policy, *Cel-Tech* requires that the public policy which is a predicate to the action must be "tethered to specific constitutional, statutory or regulatory provisions." *Schnall v. Hertz Corp.*, 78 Cal. App. 4th 1144, 1166 (2000) (*Cel-Tech* holding that "any claims of unfairness under the UCL should be defined in connection with a legislatively declared policy" also applied to UCL actions brought by consumers); *Churchill Village, L.L.C. v. General Electric Co.*, 169 F. Supp. 2d 1119, 1130 & fn. 10 (N.D. Cal. 2000) (holding *Cel-Tech's* definition of unfair also applies to consumer UCL actions).

Here, the complaint fails to allege facts to support the "unfair" prong of the UCL. (*See* Dkt. No. 1, Compl. ¶¶ 30-38.) Besides argument, Plaintiff fails to cite where in complaint he makes allegations to support the "unfair" standard. Accordingly, the Court also GRANTS dismissal of the unfair prong of the UCL.

In California, the "common law tort of unfair competition is generally thought to be synonymous with the act of 'passing off' one's goods as those of another" or "acts analogous to 'passing off' such as the sale of confusingly similar products, by which a

person exploits a competitor's reputation in the market." *Bank of the West v. Superior Ct.*, 2 Cal. 4th 1254, 1263 (1992). The Ninth Circuit, relying on *Bank of the West*, affirmed the district court's dismissal of the common law unfair competition claim because it did not allege that defendants "passed off their goods as those of another nor that they exploit trade names or trademarks." *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1153 (9th Cir. 2008). While Plaintiff alleges that the common law claim is not limited solely to "passing off" another goods or trademark infringement, it provides no legal authority in support. (Dkt. No. 17 at 29.) Relying on Ninth Circuit precedent, the Court concludes that Plaintiff has failed to allege a claim under common law unfair competition as it has not alleged that defendant passed off its goods as those of another or that it exploited any trademarks or trade names. The Court also GRANTS Defendant's motion to dismiss the common law unfair competition claim.[5]

## F.   Leave to Amend

Where a motion to dismiss is granted, leave to amend should be granted "unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting S*chreiber Distrib. Co. v. Serv Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)). In other words, where leave to amend would be futile, the Court may deny leave to amend. *See Desoto,* 957 F.2d at 658*; Schreiber,* 806 F.2d at 1401. Here, Plaintiff seeks leave to amend on any claims that the Court dismisses. Because Plaintiff can cure the deficiencies in the complaint, the Court GRANTS Plaintiff leave to file a first amended complaint. *See De Soto*, 957 F.2d at 658; *Vess,* 317 F.3d at 1107–08 ("As with Rule 12(b)(6) dismissals, dismissals for failure to comply with Rule 9(b) should ordinarily be without prejudice").

/ / /

---

[5] At this stage, because the Court has granted dismissal of the complaint, the Court declines to address Defendant's argument concerning the remedies Plaintiff seeks. (Dkt. No. 15-1 at 17, 19.)

## Conclusion

Based on the reasoning above, the Court GRANTS Defendant's motion to dismiss for failing to comply with Rule 9(b) and failure to state a claim under Rule 12(b)(6) with leave to amend.  Plaintiff shall file an amended complaint within 20 days of the date of this order.  The hearing set on January 22, 2021 shall be **vacated**.

IT IS SO ORDERED.

Dated: January 15, 2021

Hon. Gonzalo P. Curiel
United States District Judge