UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEROME'S FURNITURE WAREHOUSE, a California Corporation,<br><br>Plaintiff,<br><br>v.<br><br>ASHLEY FURNITURE INDUSTRIES, INC., a Wisconsin Corporation; and DOES 1 through 50, inclusive,<br><br>Defendant. | Case No.:  20CV1765-GPC(BGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br>**[Dkt. No. 21.]** |

Before the Court is Defendant's motion to dismiss the first amended complaint pursuant to Federal Rule of Civil Procedure 9(b) and 12(b)(6).  (Dkt. No. 21.)  Plaintiff filed an opposition.  (Dkt. No. 24.)  Defendant replied.  (Dkt. No. 26.)  Based on the reasoning below, the Court GRANTS in part and DENIES in part Defendant's motion to dismiss the first amended complaint.

### Background

On September 9, 2020, Plaintiff Jerome's Furniture Warehouse ("Plaintiff"or "Jerome's") filed a complaint against its competitor Defendant Ashley Furniture Industries, Inc. ("Defendant" or "Ashley").  On January 15, 2021, the Court granted Defendant's motion to dismiss the complaint with leave to amend.  (Dkt. No. 19.)  On

February 3, 2021, Plaintiff filed a first amended complaint ("FAC") alleging 1) false advertising arising under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); 2) unfair competition under California's Business and Professions Code section 17200 *et seq.* ("UCL")' and 3) violation of California's False Advertising Law ("FAL") under Business and Professions Code section 17500 *et seq.* (Dkt. No. 20, FAC.)   On February 17, 2021, Defendant filed the instant motion to dismiss all causes of action in the FAC which is fully briefed.  (Dkt. Nos. 21, 24, 26)

Plaintiff has been selling quality furniture and home furnishings to retail customers since 1954.  (Dkt. No. 20, FAC ¶ 8.)  Its business model offers quality product and outstanding customer service at the lowest prices possible.  (*Id.*)  It has built its brand and customer goodwill through "Jerry's price" which the consumers have come to recognize as a no-haggle price where the customer can expect to purchase furniture and home furnishings with confidence that the stated price reflects a fair and honest price with no hidden fees or terms.  (*Id. ¶* 9.)

Defendant is also a retail seller of furniture since 1987 but in contrast to Plaintiff's no-haggle price, its business practices include false and misleading advertising intended to deceive customers into falsely believing that it offers prices and financing that cannot be beaten by Plaintiff or other competitors.  (*Id.* ¶¶ 4, 10.)  In fact, the State Attorney General for the State of Arizona initiated an action against Ashley's practice of using false, inaccurate and/or inadequate disclaimers about the terms of its sales in advertisements which resulted in a consent judgment regulating the manner in which Ashely advertises.  (*Id.* ¶¶ 11-13; *id.*, Ex. A.)

Plaintiff alleges four misrepresentations in Defendant's advertisements.  First, it claims that Defendant's use of the term "PLUS" is misleading.  (*Id.* ¶¶ 14-35.)   From July 28, 2020 through August 10, 2020, Defendant distributed print advertisements throughout San Diego County and southern California stating "40% OFF PLUS! 60 MO. NO interest NO down payment NO minimum purchase."  (*Id.* ¶ 14.)  This is one example of ads that Plaintiff routinely employs misrepresenting a percentage off in addition to

interest free payments.  (*Id.* ¶ 20.)  Plaintiff avers that these advertisements mislead consumers into believing that Ashley will honor 40% off its regular advertised prices for all its merchandise and honor 60 months to pay off the 40% discounted purchase interest free with no down payment and no minimum purchase.  (*Id.* ¶ 15.)  It is not until the customer is on the sales floor and after they have selected merchandise to buy that they learn that the offer is either 40% off already inflated prices or 60 months interest free payments.  (*Id.* ¶¶ 14, 18.)  These ads are also misleading because the ads do not disclose that most of the merchandise at the Ashley stores are excluded from the advertised sale due to on site "manager's specials" and/or other exclusions discovered once a customer enters the stores.  (*Id.* ¶ 16.)  The disclaimer that the sale in the ad cannot be combined with any other promotion or discount is on the second page of the ad and in microscopic fine print.  (*Id.*)

For days before and after December 26, 2020, Defendant also ran a large billboard advertisement along the Interstate 15 freeway near the Ontario exit in Corona, California promoting a "New Year 2021 Super Sale" stating "50% OFF! PLUS 36 MONTHS" with no disclaimers.  (*Id.* ¶¶ 23, 24.)  This billboard is materially identical to other billboard advertisements by Defendant throughout Southern California and the rest of the country.  (*Id.* ¶ 24.)  The billboard ad misrepresents to the public that Ashley is offering both 50% off the regular advertised purchase price of all merchandise plus 36 months interest free payments.  (*Id.*)  These representations are made despite the fact it routinely refuses to honor both features of the sale and many items are excluded from the offer.  (*Id.*)

Defendant is aware of the effects of its misleading advertisements and this business practice of misleading ads confuses and misleads consumers into its stores.  (*Id.* ¶ 27.)  Kerry Lebensburger, Ashley's Senior Vice President of Business Development, coaches Defendant to engage in these misleading methods of advertising in order to confuse and deceive members into patronizing its stores.  (*Id.*)  In an email to Defendant's retail chains, he wrote "80% read the headline, only 20% of those then read the content."  (*Id.*)

This explains why its headlines never include the fine print and its confusing and contradictory fine print is hidden at the bottom of the second page of the ads. (*Id.*)

On August 6, 2020, Plaintiff's representatives visited Defendant's store on Miramar Road in San Diego, California to determine if it would honor its advertised terms of sales within the stores. (*Id.* ¶ 31.) At the time, the promotion was "50% off plus 60 months no interest" which was in print advertisement and also on the door of Defendant's store. (*Id.*) While in the store, Plaintiff's representatives noted that nearly all items within Defendant's upholstery and dining department and all "14-piece packages" were already marked down with "manager's special"; therefore, the promotion was not applicable to those items. (*Id.* ¶ 32.) In the bedroom section, while none of the items were marked down with "manager's specials" all were marked up to roughly double Plaintiff's prices for similar pieces. (*Id.* ¶ 33.) On these items, the salesperson represented that they could receive 40% off the already double marked up prices but could not take advantage of the 60 months no interest payments. (*Id.*) The salesperson explained that "PLUS" meant the second sales term was "another" sales option available but Plaintiff's representatives could not receive both. (*Id.*)

Second, Plaintiff claims that Defendant falsely and misleadingly advertises by overstating the actual "regular price" of its merchandise in special print advertising for the purpose of falsely inflating the "savings" to be realized from its "sale price." (*Id.* ¶¶ 36-42.) For example, in Defendant's New Years Super Sale print ad distributed throughout San Diego County and valid from December 25, 2020 through January 11, 2021, Defendant intentionally misrepresented the "regular price" of the Ballinasloe 3-piece sectional sofa as $2,299.00 and offered a sale price of $1,150.00 causing consumers to perceive a savings of $1,149.00. (*Id.* ¶ 36.) However, the actual regular advertised price for the set is $1,300.00 and can be viewed by the price listed on its website as of the date of the FAC. (*Id.* ¶ 37.) By falsely inflating regular prices, it misrepresents discounts that do not, in fact, exist and which represent a false discount under the regulations of the Federal Trade Commission, 16 C.F.R. § 233.1(a) and 16 C.F.R. § 233.3. (*Id.* ¶ 38.)

Again, in a November 24, 2020 internal communication, Mr. Lebensburger suggested to stores, "Raise prices, then offer a discount if willing to wait for delivery . . . the longer you wait the more you save, up to 40% off for 4 months." (*Id.* ¶ 40.)  This indicates that Ashley is fully aware of the unfair advantage by using misleading advertisement over ethical retailers. (*Id.*)

Third, Plaintiff asserts that Defendant misrepresents the quality of its merchandise by falsely overstating the savings consumers can expect to receive. (*Id.* ¶¶ 43-44.)  By grossly inflating the regular price of its products, it misleads consumers into believing that its goods are of higher quality than they really are. (*Id.* ¶ 44.)

Finally, Plaintiff maintains that Defendant misleads by setting "time limits" on its sales. (*Id.* ¶ 45.)  By promoting its false and misleading advertisement for a "limited time only" it creates a false sense of urgency as those who will respond to the ad believes they need to "act fast" and visit the stores before the sale ends. (*Id.*)  This creates foot traffic to its stores through false and/or misleading statements. (*Id.*)  Based on the examples of ads presented, the real terms of the promotions seldom change at all. (*Id.*)

Defendant only reveals the truth of the misleading advertisements after a customer has decided to purchase a product and by that point, they are reluctant to leave and start a new search. (*Id.* ¶ 48.)  It is well known in the industry that higher volumes of "foot traffic" leads to higher sales. (*Id.* ¶ 49.)  As a result of its false and misleading advertising practices, Defendant dupes the customers but also pulls sales away from Plaintiff and other honest retailers. (*Id.* ¶¶ 49, 50.)

## Discussion

### A.    Legal Standard as to Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1990).  Under Federal Rule of Civil Procedure

8(a)(2), the plaintiff is required only to set forth a "short and plain statement of the claim showing that the pleader is entitled to relief," and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A complaint may survive a motion to dismiss only if, taking all well-pleaded factual allegations as true, it contains enough facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.,* 572 F.3d 962, 969 (9th Cir. 2009) (quotations omitted). In reviewing a Rule 12(b)(6) motion, the Court accepts as true all facts alleged in the complaint, and draws all reasonable inferences in favor of the plaintiff. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009).

**B.     Federal Rule of Civil Procedure 9(b)**

Courts in this district have applied Rule 9(b) to false advertising claims under the Lanham Act that are grounded in fraud. *See Bobbleheads.com, LLC v. Wright Bros., Inc*., 259 F. Supp. 3d 1087, 1095 (S.D. Cal. 2017) ("As to this threshold matter, the Court agrees with the weight of authority that Rule 9(b) applies to Lanham Act claims that are grounded in fraud."). Moreover, the Ninth Circuit has held that Rule 9(b) applies to state-law causes of action, including the UCL and FAL. *Vess v. Ciba-Geigy Corp., U.S.A*., 317 F.3d 1097, 1103 (9th Cir. 2003) (applying Rule 9(b) to section 17500 claim); *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009) (applying Rule 9(b) particularity requirement to UCL claim grounded in fraud).

In federal court, where a plaintiff alleges fraud or a claim is grounded in fraud, Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b).  However, "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.*  A party must set forth "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Odom v. Microsoft Corp*., 486 F.3d 541, 553 (9th Cir. 2007) (internal quotation marks omitted).

Allegations of fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *see also Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (noting that particularity requires plaintiff to allege the "who, what, when, where, and how" of the alleged fraudulent conduct).  "Rule 9(b) would clearly be superfluous if its only function were to ensure that defendants are provided with that degree of notice which is already required by Rule 8(a)." *In re GlenFed, Inc. Sec. Litig*., 42 F.3d 1541, 1547 (9th Cir. 1994) (*en banc*) *superseded by statute on other grounds*, Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u–4(b)(1), *as recognized in Ronconi v. Larkin,* 253 F.3d 423, 429 n.6 (9th Cir. 2001). In addition, the complaint must state "what is false or misleading about a statement, and why it is false." *Id.* at 1548.

**C.    Motion to Dismiss Complaint Under Rule 9(b)**

Defendant moves to dismiss the FAC for failure to comply with Rule 9(b) arguing Plaintiff did not cure the deficiencies the Court noted in its prior order.  (Dkt. No. 21-1 at 8-14.[1])  Plaintiff responds that it has sufficiently alleged facts to put Defendant on notice as to the fraud claims against it.  (Dkt. No. 24 at 21-25.)

---

[1] Page numbers are based on the CM/ECF pagination.

Here, the FAC satisfies Rule 9(b).  The FAC presents a print advertisement that was distributed within San Diego County and beyond offering 40% off PLUS 60 months interest free payment, no down payment and no minimum purchase that ran from July 28, 2020 through August 10, 2020. (Dkt. No. 20, FAC ¶ 14.)  Plaintiff claims the advertisement represents that Ashley will honor 40% off its regularly advertised price for all of its merchandise and allow consumers 60 months to pay off their 40% discounted purchase, free of interest with no down payment and no minimum purchase.  (*Id.* ¶ 15.)  The advertisement is misleading because Ashley will only honor either 40% off or 60 months interest-free payments but not both.  (*Id.*)  Moreover, the advertisement is misleading because Ashley does not disclose on the face of the ads that most of the merchandise in its stores are excluded from the terms of the promotion due to other promotions such as "manager's specials" already going on in the store and this disclaimer is buried in tiny fine print at the bottom of the ad.  (*Id*. ¶¶ 16, 22.)  Ashley misleads consumers to believe they may receive both 40% off and 60 months of free interest in order create foot traffic into their stores.  (*Id.* ¶ 18.)  Consumers are not informed about the true terms of purchase until they are already in Ashley's stores and usually after they have selected their merchandise.  (*Id.* ¶ 19.)  Plaintiff alleges the ad is one of many examples of misleading and false advertisement in both print advertising and on Defendant's website to confuse and deceive consumers.  (*Id*. ¶¶ 20, 21.)  The Court concludes that these allegations describe the who, what, when, where, and how of the alleged fraudulent conduct sufficient to put it on notice as to the allegations against it.

Defendant argues that the claims fail under Rule 9(b) because Plaintiff does not identify a single instance where a customer was refused the combination offer or provide other facts indicating that the advertisement is false or deceptive.  (Dkt. No. 21-1 at 9.)  In its prior order, the Court dismissed the claims under Rule 9(b) because the complaint alleged only that customers had frequently complained about the misleading advertisements. Given that the claims of fraud were based on customer complaints, the complaint did not provide the specificity required under Rule 9(b).  However, the FAC

does not rely on customer complaints to support its allegations of fraud but on the advertisements themselves.  Therefore, Defendant's argument is not persuasive.

Second, Defendant contends that Plaintiff has failed to allege facts that the advertisement using "PLUS" was never honored by Ashley.  However, the FAC alleges that when Plaintiff representatives visited Ashley stores, the sales representative told them that the promotion was a choice between a percentage off or extended payments without interest and they could not take advantage of both.  (Dkt. No. 20, FAC ¶ 33.) Therefore, Defendant's argument is belied by this allegation.

Thus, the Court DENIES Defendant's motion to dismiss the claims in the FAC for failure to comply with Rule 9(b).

**D.      First Cause of Action – False Advertising, 15 U.S.C. § 1125(a)(1)(B)**

Defendant moves to dismiss the first cause of action arguing that Plaintiff has failed to allege facts to state a false advertising claim under the Lanham Act.  (Dkt. No. 21-1 at 14-17.)  Plaintiff disagrees.  (Dkt. No. 24 at 25-29.)

Under the Lanham Act, a false advertising claim, "requires a showing that (1) the defendant made a false statement either about the plaintiff's or its own product; (2) the statement was made in commercial advertisement or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to the defendant, or by a lessening of goodwill associated with the plaintiff's product."  *Newcal Indus., Inc. v. Ikon Office Sol*., 513 F.3d 1038, 1052 (9th Cir. 2008) (quoting *Jarrow Formulas, Inc. v. Nutrition Now, Inc*., 304 F.3d 829 (9th Cir. 2002)).  "To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers."  *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997); *Tiffany Inc. v. eBay Inc.,* 600 F.3d 93, 112 (2d Cir.

2010) ("A claim of false advertising may be based on at least one of two theories: 'that the challenged advertisement is literally false, i.e., false on its face,' or 'that the advertisement, while not literally false, is nevertheless likely to mislead or confuse consumers.'").

Here, on the first factor, the FAC alleges that Defendant's advertisements made false statements about its own products.  (Dkt. No. 20, FAC ¶¶ 15, 23, 29, 37.)  For example, the FAC claims that the advertisements promote a percentage off PLUS certain months of interest free payments with no down payment and no minimum purchase; however, the advertisement is false because a consumer cannot reap the benefits of both benefits because Ashley will only honor a percentage off or reduced interest free payments over a period of months.  (*Id.* ¶ 15.)  In addition, Ashley routinely manipulates its "regular" prices by falsely inflating its regular prices to promote a perceived savings to the consumer.  (*Id.* ¶ 36.)  Finally, the time limits placed on advertisements, for a "limited time only" are also false or misleading because the material terms of the sale do not materially change.  (*Id.* ¶ 45.)  Plaintiff has plausibly alleged that Ashley made a literally false statement about the pricing of its own products.

On the second factor and fifth factor, without explanation, Defendant summarily argues that Plaintiff fails to allege that Defendant's "statement was made in a commercial advertisement or promotion, and that the statement entered interstate commerce."  (Dkt. No. 21-1 at 15.)  Plaintiff opposes arguing that it alleges that the misleading ads were published within interstate commerce citing to an allegation and picture in the FAC of a billboard along an interstate freeway located in Corona, California.  (Dkt. No. 24 at 26.)

Contrary to Defendant's argument, on the second factor, the FAC alleges that Defendant made numerous false statements as provided in the print advertisements as well as billboard advertisements which were made in commercial advertisement or promotion.  (Dkt. No. 20, FAC ¶¶ 14, 15, 20 24, 25.)  Next, on the fifth factor, whether the false statement entered interstate commerce, neither party provides relevant legal authority to support their argument.  The Lanham Act reaches statements that a person

"uses in commerce." 15 U.S.C. § 1125(a)(1).  The Act defines "commerce" as "all commerce which may lawfully be regulated by Congress."  15 U.S.C. § 1127.  Congress may regulate intrastate commerce that "substantially affects" interstate commerce. *United States v. Lopez*, 514 U.S. 549, 559 (1995).  Therefore, "the word 'commerce' as used in the Lanham Act [also] includes intrastate commerce which affects interstate commerce." *Duncan v. Stuezle*, 76 F.3d 1480, 1489 n.14 (9th Cir. 1996); *Stauffer v. Exley*, 184 F.2d 962, 966 (9th Cir. 1950) ("[a]n infringement committed in intrastate commerce but affecting interstate commerce could clearly be regulated by Congress and thus would be within the present [Lanham] Act.").  In sum, Lanham Act jurisdiction only attaches to use of a false statement in interstate commerce, or "intrastate commerce which 'affects' interstate commerce." *Thompson Tank & Mfg. Co. v. Thompson*, 693 F.2d 991, 992–93 (9th Cir. 1982) (citations omitted).  Moreover, communications made on public websites are made in interstate commerce.  *See United States v. Sutcliffe*, 505 F.3d 944, 952-53 (9th Cir. 2007) ("[T]he Internet is an instrumentality and channel of interstate commerce.") (internal citation omitted).

The FAC alleges the Defendant's billboard that was placed along Interstate 15 in Corona, California is materially identical to other billboards used by Ashley throughout Southern California and the rest of the country.  (Dkt. No. 20, FAC ¶¶ 24, 25.) Defendant is in the business of selling furniture to members of the retail public within Southern California and beyond.  (*Id.* ¶ 53.)  Defendant uses both print advertising and advertising on its website.  (*Id.* ¶¶ 21, 37.)  Accordingly, because the FAC alleges that the billboards ads are used throughout the country and Ashley uses the misleading ads on its website, the FAC has alleged that Defendant caused its false statements to enter interstate commerce.

On the third factor of whether "the statement actually deceived or had the tendency to deceive a substantial segment of its audience", Defendant argues that Plaintiff does not allege any false statements made by Ashley and does not allege a single instance where a

consumer was deceived by the advertisements described in the FAC.[2]  (Dkt. No. 21-1 at 15.)  The FAC alleges that the false advertisements actually deceive or have a tendency to deceive an appreciable number of relevant customers.  (Dkt. No. 20, FAC ¶¶ 25, 27, 55.)  Moreover, when a statement is literally false, the elements of actual deception and materiality are presumed.  *AECOM Energy & Constr., Inc. v. Ripley*, 348 F. Supp. 3d 1038, 1056 (C.D. Cal. 2018), *rev'd and remanded on other grounds by* –Fed. App'x --, 2021 WL 1117780 (9th Cir. Mar. 24, 2021).  Because Plaintiff alleged that Defendant's advertisements are literally false, the court may presume that actual deception and materiality are sufficiently alleged.  *See Factory Direct Wholesale, LLC v. iTouchless Housewares & Products, In*c., 411 F. Supp. 3d 905, 924 (N.D. Cal. 2019) (on motion to dismiss because plaintiff alleged that the statement is literally false, actual deception can be presumed).

Finally, on the sixth factor, Plaintiff has alleged it "has been or is likely to be injured as a result of Ashley's false statements."  Defendant's only argument on this factor is that Plaintiff has not plausibly alleged injury on the claim that the time limits on its sales are misleading because consumers can compare Ashley's prices against those charged by Jerome's.  (Dkt. No. 21-1 at 17.)  Plaintiff asserts that it has alleged it has been injured by direct diversion of sales from itself to the defendant and the lessening of goodwill associated with its products.  (Dkt. No. 24 at 27-28.)

Under the Lanham Act, a false advertising claims requires a plaintiff to allege: (1) an "injury to a commercial interest in sales or business reputation" (2) "proximately caused by the defendant's misrepresentations."  *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 140 (2014).  A plaintiff alleging competitive injury

---

[2] Defendant also argues that email comments by Mr. Lebensburger and citation to three federal regulations cannot be used to support the third factor that the ads actually deceived or had a tendency to deceive.  (Dkt. No. 21-1 at 15-16.)  In response, Plaintiff argues that its allegations about Mr. Lebenburger's email comments and the three federal regulations was not used to support the third factor. (Dkt. No. 24 at 27.)

20CV1765-GPC(BGS)

under the "false advertising" prong "need only believe that he [or she] is likely to be injured in order to bring a Lanham Act claim." *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 825 (9th Cir. 2011).  Moreover, commercial injury is presumed "when defendant and plaintiff are direct competitors and defendant's misrepresentation has a tendency to mislead consumers." *Id.* at 826.  Here, because the FAC alleges that Jeromes's and Ashley are direct competitors and Ashley's misrepresentation in its advertisement has a tendency to mislead consumers, commercial injury is presumed. Accordingly, the sixth factor has been alleged.

Accordingly, the Court DENIES Defendant's motion to dismiss the first cause of action for false advertising under the Lanham Act.

**E.     Second Cause of Action - Unfair Competition and Third Cause of Action – False Advertising**

Defendant moves to dismiss the second and third causes of action for failing to establish standing, to establish it has no adequate remedy at law and that it is entitled to restitution.  (Dkt. No. 21-1 at 18-23.)  Plaintiff responds that it has standing to sue under the UCL and FAL, it can plead alternative damages, and is entitled to restitution based on its allegations.  (Dkt. No. 24 at 30-36.)

**1.   Standing**

Defendant argues that Plaintiff has failed to allege standing to sue under the UCL and FAL because it failed to allege its actual reliance on the alleged false advertisements rather than reliance by third parties as the Court concluded in its prior order.  (Dkt. No. 21 at 18-19.)  Plaintiff opposes contending that it has alleged its own reliance and resulting damages and the reliance of consumers, whose reliance proximately, caused injury to it.  (Dkt. No. 17 at 29-30.)

The UCL and FAL claims are based on allegedly fraudulent advertisements and sound in fraud.  (Dkt. No. 20, FAC ¶¶ 60-79.)  The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  The FAL prohibits "untrue or

misleading" statements.  Cal. Bus. & Prof. Code § 17500; *Ebner v. Fresh, Inc.*, 838 F.3d 958, 967 n.2 (9th Cir. 2016) ("The FAL prohibits any unfair, deceptive, untrue, or misleading *advertising."*).  The language of both statutes is "'broad' and 'sweeping' to 'protect both consumers and competitors by promoting fair competition in commercial markets for goods and services.'"  *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 985 (9th Cir. 2015) ((quoting *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 320 (2011)).

"In 2004 . . . the voters of California passed Proposition 64, which restricts standing for individuals alleging UCL and FAL claims to persons who have suffered injury in fact and have lost money or property as a result of the unfair competition." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1103 (9th Cir. 2013), *as amended on denial of reh'g and reh'g en banc* (July 8, 2013) (quotations omitted).  "The phrase 'as a result of' in its plain and ordinary sense means 'caused by' and requires a showing of a causal connection or reliance on the alleged misrepresentation." *Kwikset Corp.*, 51 Cal. 4th at 326 (citations omitted).  But where a UCL claim "sounds in fraud, [the plaintiff is] required to prove actual reliance on the allegedly deceptive or misleading statements, and that the misrepresentation was an immediate cause of [the] injury-producing conduct." *Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 793 (9th Cir. 2012) (internal quotation marks omitted) (quoting *Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310 (2011) and *In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)).  Distinct from this case, *Sateriale*, *Kwikset* and *In re Tobacco II Cases* involved UCL and/or FAL claims brought by consumer plaintiffs and not competitor plaintiffs.

In its prior order, the Court observed that no California state court has addressed whether "competitor plaintiffs must plead their own reliance or whether pleading consumer reliance is sufficient for fraudulent business practice claims brought by competitors" noting a split of authority in the California district courts with a majority view that a plaintiff must alleges its own reliance and not the reliance of third parties. (Dkt. No. 19 at 14-15 (quoting *23andMe, Inc. v. Ancestry.com DNA, LLC*, 356 F. Supp.

3d 889, 911 (N.D. Cal. 2018) and citing *In re Outlaw Lab., LLP*, 463 F. Supp. 3d 1068, 1086 (S.D. Cal. 2020) (because Outlaw did not challenge standing, the Court adopted the majority approach requiring reliance to be pled by the plaintiff)). In *23andMe, Inc*., however, because the UCL unfair prong claim did not sound in fraud, the court held that the actual reliance requirement did not apply. *23andMe, Inc*., 356 F. Supp. 3d at 910-11.

After a careful review of the recent caselaw and the California legislative's intent that the substantive reach of the claims under UCL and FAL be "expansive", *Kwikset Corp*., 51 Cal. 4th at 320, the Court adopts the minority view that a competitor may allege false advertising claims under the UCL and FAL without alleging its own reliance and need only allege it suffered an injury, loss of money or property, as a result of the alleged misrepresentations. *See Allergan USA Inc. v. Imprimis Pharms, Inc*., Case No. SA CV 17-1551-DOC (JDEx), 2017 WL 10526121, at *13 (C.D. Cal. Nov. 14, 2017) (declining to extend reasoning in *Kwikset* on UCL false advertising claim requiring plaintiff to plead its own reliance because it involved consumer claims and not competitor claims); *Lona's Lil Eats, LLC v. DoorDash, Inc.,* No. 20-cv-06703-TSH, 2021 WL 151978, at *10 (N.D. Cal. Jan. 18, 2021) ("A non-consumer plaintiff can allege false advertising claims under the UCL and FAL without alleging its own reliance, as long as the plaintiff has alleged a sufficient causal connection."); *Simpson Strong-Tie Co. Inc. v. MiTek Inc.,* Case No. 20-cv-06957-VKD, 2021 WL 1253803, at *6 (N.D. Cal. Apr. 5, 2021).

In *Allergan USA*, the district court explained that consumer claims and competitor claims are fundamentally distinct and to apply the actual reliance requirement on competitors "makes little sense." *Allergan USA Inc*., 2017 WL 10526121, at *13. "Competitor plaintiffs are concerned with the loss of sales and market share as a result of the deceptive activity. In contrast, consumer plaintiffs are concerned with the deceptive activity itself and suffer a wholly different type of harm from competitors—getting hoodwinked into purchasing a product or service. It is hard to imagine a scenario, though, in which a competitor plaintiff would rely on a competitor defendant's misleading

20CV1765-GPC(BGS)

advertisements and suffer injury.  After all, situations in which a company would purchase its competitor's products are few and far between.  A company may purchase its competitor's products to conduct market research or, where the competitor's products are unprotected by intellectual property law, in an attempt to reverse engineer a particular feature. . . . Thus, imposing the reliance requirement on competitor claims would impose a superficial hurdle on competitor plaintiffs seeking to stop or recover for damages caused by their competitor's false advertising.  *Kwikset* does not appear to go so far."  *Id.*

Because the UCL and FAL protect both "consumers and competitors", *Kwikset Corp.*, 51 Cal. 4th at 320, requiring a competitor to allege and then demonstrate its own reliance on a competitor defendant's fraudulent conduct, an uncommon occurrence, would render the protections afforded under the UCL and FAL to competitors meaningless.  The Court finds the reasoning in *Allergan USA* persuasive and concludes that a competitor plaintiff need not allege actual reliance on the defendant's alleged fraudulent statements.  Instead, Plaintiff need only allege that it lost money or property as a result of the alleged misrepresentations.  *See Kwikset Corp.,* 51 Cal. 4th at 326.  Here, Plaintiff alleges it lost money or property, such as lost sales and damage to its goodwill with former, existing and potential customers, caused by Defendant's alleged misleading advertisements.  (Dkt. No. 20, FAC ¶¶ 68, 75.)  These allegations satisfy the standing requirements under the UCL and FAL.  Thus, the Court DENIES Defendant's motion to dismiss the second and third causes of action for lack of standing.

## 2.  No Adequate Remedy at Law

Citing to *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020), Defendant moves to dismiss the UCL and CLRA claims because Plaintiff has not alleged that it lacks an adequate remedy at law and, in fact, the FAC alleges that that damages are ascertainable.  (Dkt. No. 21-1 at 20.)  In opposition, Plaintiff argues that on injunctive relief, it has alleged its inability to readily ascertain money damages and that *Sonner* is distinguishable based on its unique procedural posture because damages claim was

16

voluntarily dismissed on the eve of trial.  (Dkt. No. 24 at 35.)  Plaintiff does not appear to challenge the restitution argument brought by Defendant.

The FAC seeks restitution and injunctive relief.  (Dkt. No. 20, FAC ¶¶ 70- 72, 78-79.)  In *Sonner*, the Ninth Circuit, relying on United States Supreme Court precedent, held that "traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution under the UCL and CLRA in a diversity action."  *Sonner v. Premier Nutrition Corp*., 971 F.3d 834, 844 (9th Cir. 2020).  In line with this, the court held that a plaintiff must allege that she "lacks an adequate remedy at law before securing equitable restitution for past harm under the UCL and CLRA."  *Id.*  (citations omitted); *see also Anderson v. Apple Inc*., -- F. Supp. 3d --, 2020 WL 6710101, at *7 (N.D. Cal. Nov. 16, 2020 ("the plaintiffs have not pleaded inadequate remedies at law to begin with").  Pointing out that the operative complaint did not allege that Sonner lacked an adequate legal remedy and the equitable restitution she sought was the same as damages she sought to compensate for same past harm, the Ninth Circuit affirmed dismissal of the equitable restitution claim under the UCL and CLRA.  *Sonner,* 971 F.3d at 844 (citing *O'Shea v. Littleton*, 414 U.S. 488, 502 (1974) (holding that a complaint seeking equitable relief failed because it did not plead "the basic requisites of the issuance of equitable relief" including "the inadequacy of remedies at law")).

While *Sonner*'s holding was limited to the equitable relief of restitution, *Sonner*, 971 F.3d at 842 (noting that "injunctive relief [was] not at issue"), district courts have held that the "adequate remedy at law" requirement applies to equitable relief, which includes injunctive relief claims.  *See Audrey Heredia v. Sunrise Senior Living LLC*, Case No. 8:18-cv-01974-JLS-JDE, 2021 WL 819159, at *4 (C.D. Cal. Feb. 10, 2021) (inadequate remedy at law applies to all claims for equitable relief) (citing *IntegrityMessageBoards.com v. Facebook, Inc*., No. 18-CV-05286-PJH, 2020 WL 6544411, at *5 (N.D. Cal. Nov. 6, 2020) ("Whatever the facts before the panel in *Sonner,*

the Supreme Court in *York*[3] did not draw any distinction among the various forms of equitable relief when requiring the absence of a 'plain, adequate, and complete remedy at law' to obtain it."); *see also Huynh v. Quora, Inc.*, No. 5:18-CV-07597-BLF, 2020 WL 7495097, at *19 (N.D. Cal. Dec. 21, 2020) ("Cases in this Circuit have held that *Sonner* extends to claims for injunctive relief.") (collecting cases); *In re MacBook Keyboard Litig.*, No. 5:18CV2813-EJD, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) ("[N]umerous courts in this circuit have applied *Sonner* to injunctive relief claims.")).

District courts have also rejected Plaintiff's attempt to distinguish *Sonner* based on the procedural posture of the case. *See Teresa Adams v. Cole Haan, LLC*, Case No. Sacv 20-913 JVS (DFMx), 2020 WL 5648605, at *2 (C.D. Cal. Sept. 3, 2020) (procedural posture in *Sonner* did not affect analysis of the traditional division between law and equity); *Zaback v. Kellogg Sales Co.*, No. 20-00268 BEN MSB, 2020 WL 6381987, at *4 (S.D. Cal. Oct. 29, 2020) (collecting cases that have "applied Sonner to dismiss complaints in cases involving similar claims at the more familiar early stages of litigation").

In response, Plaintiff argues it has alleged that legal remedies are not adequate on the claim for injunctive relief because of the inability to ascertain the amount of future damages from Ashley's continued, future misconduct. (Dkt. No. 24 at 35.)

In *Ketayi v. Health Enrollment Grp.*, -- F. Supp. 3d --, 2021 WL 347687, at *20 n. 16 (S.D. Cal. 2021), this Court found that the plaintiffs plausibly alleged there was no adequate remedy at law for the injunctive relief they sought to end the defendants' business practices because the plaintiffs sought "an order preventing Defendants from using the allegedly fraudulent or unlawful business practices in the future, or in other words, from causing future harm for which damages are not calculable." *Id.* (citing *IntegrityMessageBoards.com v. Facebook, Inc.,* No. 18-CV-05286-PJH, 2020 WL

---

[3] *Guaranty Trust Co. of New York v. York*, 326 U.S. 99 (1945).

6544411, at *7 (N.D. Cal. Nov. 6, 2020) (holding that plaintiffs had adequately alleged they lacked an adequate remedy at law for future harm sought to be remedied by injunctive relief).   Similarly, in this case, Plaintiff alleges that the amount of damages suffered by it will be difficult to ascertain if the fraudulent acts continue without injunctive relief, and thus, it has no adequate remedy at law.  (Dkt. No. 20, FAC ¶ 70.)  Therefore, the Court concludes that Plaintiff has plausibly alleged that it does not have an adequate remedy at law for injunctive relief and DENIES Defendant's motion to dismiss the injunctive relief claim.  Because Plaintiff does not oppose or argue that it has no adequate remedy at law for the restitution claim, the Court GRANTS Defendant's motion to dismiss the equitable claim for restitution as unopposed.  Even though the Court grants dismissal of the restitution claim under *Sonner*, it also considers Defendant's alternative argument on why dismissal of the restitution claim is warranted.

### 3.    Restitution

Defendant further argues that Plaintiff has not alleged any facts that it is entitled to restitution under the UCL or FAL because it has no direct or vested ownership interest in the diverted profits from Plaintiff to Defendant.  (Dkt. No. 21-1 at 21-22.)  Plaintiff claims it has alleged that Defendant's false and misleading advertisements have diverted its customers to Ashley and Plaintiff should be entitled to profits it would have earned from those customers that were diverted to Defendant's stores.  (Dkt. No. 24 at 36.)

The FAC seeks restitution.  (Dkt. No. 20, FAC ¶¶ 72, 79.)  "The object of restitution is to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest."  *Korea Supply Co. v. Lockheed Martin Corp.,* 29 Cal. 4th 1134, 1149, (2003).  In *Korea Supply*, the California Supreme Court announced two theories to support a claim for restitution:  first, the court looks at whether the plaintiff is seeking the return of money or property that was once in its possession.  *Id.*  Second, the court considers whether the plaintiff has a "vested interest in the money it seeks to recover."  *Id.*  A "vested" interest is one that is "unconditional," "absolute," and "not contingent."  *Nat'l Rural Telecomms Co-op. v. DIRECTV, Inc*., 319 F. Supp. 2d 1059,

1080 (C.D. Cal. 2003) (citing Black's Law Dictionary).  "Compensation for a lost business opportunity is a measure of damages and not restitution to the alleged victims." *Id.* at 1151 (quoting *MAI Sys. Corp. v. UIPS* 856 F. Supp. 538, 542 (N.D. Cal. 1994)).

Here, Plaintiff claims it is not seeking restitution in the form of disgorgement of Defendant's profits but instead, the loss of Plaintiff's profits due to the diversion of its customers to Defendant's stores due to the misleading advertisements.  (Dkt. No. 24 at 36.)  In *Korea Supply*, the court rejected a similar argument.  In essence, Plaintiff's claim for lost profits from its customers is essentially a measure of damages for the tort of interference with prospective economic advantage, and not restitution under the UCL. *See Korea Supply*, 29 Cal. 4th at 1151 (rejecting plaintiff's theory of damages not seeking disgorgement of all defendant's profits but seeking the amount it allegedly would have obtained as a commission it been awarded the contract); *see also Tortilla Factory, LLC v Better Booch, LLC*, Case No. 2:18-cv-02980-CAS(SKx), 2018 WL 4378700, at *10 (C.D. Cal. Sept. 13, 2018) (dismissing restitution damages as it was based diverted profits to the defendant and did not demonstrate plaintiff was once in "possession of property wrongfully acquired by [the defendant], or that it had a vested interest in [the defendant's] allegedly wrongfully obtained profits.").  Because Plaintiff has not alleged it is entitled to restitution, the Court GRANTS Defendant's motion to dismiss the restitution claim.

## Conclusion

Based on the reasoning above, the Court GRANT in part and DENIES in part Defendant's motion to dismiss.  The Court DENIES Defendant's motion to dismiss the three causes of action in the FAC and GRANTS Defendant's motion to dismiss the claim

/ / /

/ / /

/ / /

/ / /

20CV1765-GPC(BGS)

for restitution in the second and third causes of action.  The hearing set on April 23, 2021 shall be **vacated**.

      IT IS SO ORDERED.

Dated:  April 19, 2021

Hon. Gonzalo P. Curiel
United States District Judge

20CV1765-GPC(BGS)